UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

MICHELE MARY JAMES

    Plaintiff,

-v-

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

---

18-CV-0936-MJR

DECISION AND ORDER

As set forth in the Standing Order of the Court regarding Social Security Cases subject to the May 21, 2018, Memorandum of Understanding, the parties have consented to the assignment of this case to the undersigned to conduct all proceedings, including the entry of final judgment, as set forth in 42 U.S.C. § 405(g). (Dkt. No. 13)

Plaintiff Michele Mary James ("plaintiff") brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "defendant") denying her application for Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the following reasons, plaintiff's motion (Dkt. No. 8) is denied, and defendant's motion (Dkt. No. 11) is granted.

## BACKGROUND[1]

Plaintiff filed the instant application for SSI on November 4, 2013, alleging disability as of February 1, 2007. (Tr. 44, 762)[2] The State agency denied initially her claims. (Tr. 762-75) Plaintiff subsequently requested a hearing before an Administrative Law Judge ("ALJ"), and appeared with counsel for a hearing before ALJ Brian LeCours on May 31, 2016. (Tr. 723-61) On June 17, 2016, the ALJ issued an unfavorable decision finding plaintiff not disabled. (Tr. 41-56) The Appeals Council denied review on November 22, 2017. (Tr. 2-6) Following an extension of time granted by the Appeals Council, this action commenced. (Tr. 1, Dkt. No. 1)

## DISCUSSION

I. *Scope of Judicial Review*

The Court's review of the Commissioner's decision is deferential. Under the Act, the Commissioner's factual determinations "shall be conclusive" so long as they are "supported by substantial evidence," 42 U.S.C. §405(g), that is, supported by "such relevant evidence as a reasonable mind might accept as adequate to support [the] conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted). "The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts." *Smith v. Colvin*, 17 F. Supp. 3d 260, 264 (W.D.N.Y. 2014). "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force," the

---

[1] The Court presumes the parties' familiarity with plaintiff's medical history, which is summarized in the moving papers. The Court has reviewed the medical record, but cites only the portions of it that are relevant to the instant decision.

[2] Citations to "Tr.___" refer to the pages of the administrative transcript. (Dkt. No. 5)

2

Court may "not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002). Thus, the Court's task is to ask "'whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached' by the Commissioner." *Silvers v. Colvin*, 67 F. Supp. 3d 570, 574 (W.D.N.Y. 2014) (*quoting Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).

Two related rules follow from the Act's standard of review. The first is that "[i]t is the function of the [Commissioner], not [the Court], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983). The second rule is that "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve." *Veino*, 312 F.3d at 588. While the applicable standard of review is deferential, this does not mean that the Commissioner's decision is presumptively correct. The Commissioner's decision is, as described above, subject to remand or reversal if the factual conclusions on which it is based are not supported by substantial evidence. Further, the Commissioner's factual conclusions must be applied to the correct legal standard. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008). Failure to apply the correct legal standard is reversible error. *Id.*

II. *Standards for Determining "Disability" Under the Act*

A "disability" is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). The Commissioner may find the claimant disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age,

education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." *Id.* §423(d)(2)(A). The Commissioner must make these determinations based on "objective medical facts, diagnoses or medical opinions based on these facts, subjective evidence of pain or disability, and . . . [the claimant's] educational background, age, and work experience." *Dumas v. Schweiker*, 712 F.2d 1545, 1550 (2d Cir. 1983) (first alteration in original) (*quoting Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)).

To guide the assessment of whether a claimant is disabled, the Commissioner has promulgated a "five-step sequential evaluation process." 20 C.F.R. §404.1520(a)(4). First, the Commissioner determines whether the claimant is "working" and whether that work "is substantial gainful activity." *Id.* §404.1520(b). If the claimant is engaged in substantial gainful activity, the claimant is "not disabled regardless of [his or her] medical condition or . . . age, education, and work experience." *Id.* Second, if the claimant is not engaged in substantial gainful activity, the Commissioner asks whether the claimant has a "severe impairment." *Id.* §404.1520(c). To make this determination, the Commissioner asks whether the claimant has "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* As with the first step, if the claimant does not have a severe impairment, he or she is not disabled regardless of any other factors or considerations. *Id.* Third, if the claimant does have a severe impairment, the Commissioner asks two additional questions: first, whether that severe impairment meets the Act's duration requirement, and second,

whether the severe impairment is either listed in Appendix 1 of the Commissioner's regulations or is "equal to" an impairment listed in Appendix 1. *Id.* §404.1520(d). If the claimant satisfies both requirements of step three, the Commissioner will find that he or she is disabled without regard to his or her age, education, and work experience. *Id.*

If the claimant does not have the severe impairment required by step three, the Commissioner's analysis proceeds to steps four and five. Before doing so, the Commissioner must "assess and make a finding about [the claimant's] residual functional capacity ["RFC"] based on all the relevant medical and other evidence" in the record. *Id.* §404.1520(e). RFC "is the most [the claimant] can still do despite [his or her] limitations." *Id.* §404.1545(a)(1). The Commissioner's assessment of the claimant's RFC is then applied at steps four and five. At step four, the Commissioner "compare[s] [the] residual functional capacity assessment . . . with the physical and mental demands of [the claimant's] past relevant work." *Id.* §404.1520(f). If, based on that comparison, the claimant is able to perform his or her past relevant work, the Commissioner will find that the claimant is not disabled within the meaning of the Act. *Id.* Finally, if the claimant cannot perform his or her past relevant work or does not have any past relevant work, then at the fifth step the Commissioner considers whether, based on the claimant's RFC, age, education, and work experience, the claimant "can make an adjustment to other work." *Id.* §404.1520(g)(1). If the claimant can adjust to other work, he or she is not disabled. *Id.* If, however, the claimant cannot adjust to other work, he or she is disabled within the meaning of the Act. *Id.*

The burden through steps one through four described above rests on the claimant. If the claimant carries their burden through the first four steps, "the burden then shifts to

5

the [Commissioner] to show there is other gainful work in the national economy which the claimant could perform." *Carroll*, 705 F.2d at 642.

III. *The ALJ's Decision*

The ALJ followed the required sequential analysis for evaluating plaintiff's claim. Under step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since November 4, 2013. (Tr. 46) At step two, the ALJ found that plaintiff had the severe impairment of inflammatory bowel disease/Crohn's disease. (Tr. 46) At step three, the ALJ determined that plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (Tr. 46) Before proceeding to step four, the ALJ found that plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. 416.967 except that she required ready access to a restroom. (Tr. 47-50) At step four, the ALJ found that plaintiff had no past relevant work. (Tr. 50) At step five, the ALJ determined that plaintiff was capable of performing other work existing in significant numbers in the national economy, including jobs such as cleaner, office helper, and photocopying machine operator. (Tr. 51) Accordingly, the ALJ found that plaintiff had not been under a disability within the meaning of the Act. (Tr. 52)

IV. *Plaintiff's Challenge*

The sole issue presented in plaintiff's motion is whether the ALJ failed to assess the amount of time that plaintiff would be off-work due to her need for bathroom breaks.[3] Specifically, plaintiff requests remand to determine the frequency and duration of said breaks. (Dkt. No. 8-1 at 9-11)

---

[3] Plaintiff withdrew her two remaining arguments from the instant motion following the Commissioner's filing of a supplemental transcript. (Dkt. Nos. 10, 12)

6

The ALJ in this case rejected plaintiff's testimony that she required up to ten bathroom breaks per day:

> The claimant's testimony of disabling symptoms and limitations, including bathroom needs, was not entirely consistent with the evidentiary record, which shows that, while there are some limitations of function, they do not preclude all fulltime work, and that the claimant had good control of symptoms after January 2014 and also offered conflicting reports of how often she uses the bathroom.

(Tr. 47, 738, 741, 746) Contrary to plaintiff's assertion, the ALJ addressed the frequency and duration of bathroom breaks in formulating the RFC. (*See* Tr. 49 ["I have found that the claimant requires ready access to a bathroom *without a need for greater than normal restroom breaks* in an eight-hour workday;" *see also id.* ["'the claimant's inflammatory bowel disease *does not routinely require additional bathroom breaks* . . . ."]) (emphasis added).

The ALJ also discussed the lack of corroborating medical evidence of plaintiff's need for frequent bathroom privileges of up to ten breaks per day. (Tr. 48-50) For example, he cited the medical records showing that in January, 2014, she was feeling well with a condition "mostly well controlled" with medication compliance following surgery. (Tr. 48, 1173) In April, 2014, plaintiff denied hematochezia, melena, hematemesis, change in bowel habits, diarrhea, and constipation. (Tr. 49, 512) In January, 2015, plaintiff's treating gastroenterologist noted that plaintiff did well with stable Crohn's, including a period of remission. (Tr. 49, 1148-49) Although plaintiff reported occasional flare-ups, she also reported in January, 2015, that she her Crohn's had been in remission since starting with Humira with two to three bowel movements per day without nausea, vomiting, or bleeding. (Tr. 49) In April and August 2016, plaintiff reported to her primary care physician that she had three bowel movements daily and

had no abdominal-related symptoms. (Tr. 26, 50, 1281) The ALJ observed that plaintiff reported to her gastroenterologist on April 7, 2016, that she had "frequent use of the bathroom 10 times per day," but her examination was within normal limits, exhibiting non-tender abdomen without muscle guarding or rebound tenderness. (Tr. 50, 1285-86) Finally, the ALJ noted that plaintiff "appear[ed] to have a very recent exacerbation in Crohn's, per notes dated April 7, 2016, when she complained of 10 bowel movements per day, but this was generally contemporaneous with claimant's hearing and just two weeks later the claimant told her primary care provider that she only had three bowel movements per day." (Tr. 49, 1281, 1285)

The above evidence supports the ALJ's conclusion that plaintiff's inflammatory bowel disease/Crohn's did not routinely require additional bathroom breaks and that the record did not substantiate her allegations of ten bathroom breaks per day. *See Breyette v. Comm'r of Soc. Sec.*, No. 13-CV-366, 2014 WL 2533162, at *2 (N.D.N.Y. June 5, 2014) (affirming Commissioner's decision where ALJ considered frequency and duration of bathroom visits and that the medical record did not support the asserted need for additional breaks due to IBS/Crohn's). He also did not commit legal error in failing to assess the amount of time that plaintiff would be off-work due to restroom breaks because he found that she would not require any additional workday breaks.

Moreover, the ALJ accommodated plaintiff's impairment—to the extent it was supported by the record—by including in the RFC "ready access" to restroom facilities. (Tr. 47, 49) He took testimony from a vocational expert ("VE"), who identified three examples of jobs that an individual with plaintiff's age, education, no work experience and RFC could perform: cleaner, office helper, and photocopying machine operator. (Tr. 51,

8

756) Although the ALJ explicitly found that the record did not support the need for additional restroom breaks, the VE testified that these jobs could still be performed even with two extra breaks of five minutes during the workday and even if the timing of the breaks was unpredictable. (Tr. 49, 756, 758) She further testified that the cleaner job was performed in hotel rooms where a bathroom was always readily available; and with respect to the office jobs it was an acceptable practice to leave the workstation on an urgent or unpredictable basis. (Tr. 758). A vocational expert's testimony in response to hypothetical questions constitutes substantial evidence to support the ALJ's determination. *Suttles v. Berryhill*, 756 Fed. Appx. 77, 78 (2d Cir. 2019); *see also Claymore v. Astrue*, 519 Fed. Appx. 36, 38-39 (2d Cir. 2013) ("[A]n ALJ is entitled to rely on Vocational Expert's testimony of a hypothetical that is based on assumptions that are supported by evidence in the record.") (citation omitted). The RFC is therefore supported by substantial evidence in the record.

## CONCLUSION

For the foregoing reasons, plaintiff's motion for judgment on the pleadings (Dkt. No. 8) is denied, and defendant Commissioner of Social Security's motion for judgment on the pleadings (Dkt. No. 11) is granted.

The Clerk of Court shall take all steps necessary to close this case.

**SO ORDERED.**

Dated: February 14, 2020
Buffalo, New York

MICHAEL J. ROEMER
United States Magistrate Judge